UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| INDIAN LEIDER,<br><br>              Plaintiff,<br><br><br>       vs.<br><br>DR. ARTHUR MOELLER, DO, Medical Doctor, in his individual and official capacity; OFFICER WILSON, Correctional Officer, in his or her individual and official capacity; CODY HANSON, Unit Manager, in his individual and official capacity; DAYNA KLAWITTER, Registered Nurse/Provider, in her individual and official capacity,<br><br>              Defendants. | 4:22-CV-04006-KES<br><br><br>1915A SCREENING |

Plaintiff, Indian Leider, an inmate at the South Dakota State Penitentiary, filed a pro se petition pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. Leider paid his full filing fee on February 14, 2022. This court will now screen Leider's complaint under 28 U.S.C. § 1915A.

I.     **1915A Screening**

A.     **Factual Background**

The facts alleged in Leider's complaint are: that he was transported from Mike Durfee State Prison to Avera Sacred Heart Hospital in Yankton, South Dakota, on May 29, 2020. *Id.* at 5. Leider claims that a CT scan revealed that

he had two mandibular fractures. *Id.* He claims that Dr. Arthur Moeller performed surgery the next day, cutting open Leider's neck and attaching maxillary and mandibular arch bars and using 16 staples to close the incision. *Id.* He also claims that this was the first incision of Dr. Moeller's career. *Id.* Leider alleges that he was given morphine shots to help with the pain. *See id.*

Leider states that he was examined the next day and complained of severe, constant pain. *Id.* He also claims that there was a large gap between his teeth on the left side. *Id.* Leider alleges that Dr. Moeller prescribed hydrocodone, Tylenol, Motrin, and clindamycin. *Id.* He alleges that he was discharged two days later and placed in the special housing unit under a medical hold. *Id.* He also alleges that he was at a 10 out of 10 on the pain scale when he was placed in the special housing unit. *Id.* at 6.

Leider claims that he was brought back to Dr. Moeller three days later for an exam, where he was told that the wires in his jaw would be removed. *Id.* He claims that he objected and felt that the wires should stay in place, but Dr. Moeller removed them and replaced them with rubber bands. *See id.* Leider also claims that he had questions about misalignment of his teeth, diet, mouthwash, pain medication, antibiotics, pain and swelling which made sleep unbearable, and oozing at the incision site. *Id.* Leider alleges that he tried to ask these questions, but Correctional Officer Wilson, who brought him to the exam, asked Dr. Moeller if Dr. Moeller was finished with the exam. *Id.* Leider alleges that Dr. Moeller said yes, at which point Wilson grabbed Leider, pulled him off the exam chair, and pushed him towards the door. *Id.* Leider also

alleges that Dr. Moeller said he would talk to Health Services about pain medication as Leider was being pushed out the door. *Id.*

Leider alleges that he was told by a nurse during med pass at the State Prison later that day that his pain medication prescription was out. *Id.* He claims that he asked about Dr. Moeller following up with Health Services, and a nurse told him that "its [sic] up to our provider to allow you to have them in here." *Id.* He claims that he filed a grievance, and the official response was that both providers encouraged him to continue on his current pain medication plan, which he alleges was different from the medication list prescribed by Dr. Moeller. *See id.* at 6-7. Leider alleges that he was left in an empty cell in the special housing unit for weeks without his prescribed pain medication. *Id.* He also alleges that the documented provider on shift was Dayna Klawitter, RN, although he does not specify the exact times and dates during these weeks that Klawitter was on shift. *See id.*

Leider claims that he was written up on June 9, 2020, for his behavior at the follow-up exam with Dr. Moeller. *Id.* He claims that Wilson wrote a transport report that described Leider's verbal frustration regarding how Wilson grabbed and pushed him at the end of the exam. *Id.* Leider also claims that Wilson accused him of being insolent towards hospital staff. *Id.* Leider alleges that this write-up did not accurately describe his interactions with hospital staff because he only asked "concerning questions about his painful condition." *Id.* He also alleges that this write-up caused him to be transferred to the Sioux Falls State Penitentiary on June 15, 2020. *See id.*

Leider claims that he feared an attack from other inmates[1] in the unit at the State Penitentiary where he was to be housed. *Id.* He claims that he sought to be transferred from his assigned housing unit to the west unit, which he believed had "a more stable inmate population[.]" *Id.* at 7-8. Leider alleges that Unit Manager Cody Hanson refused this transfer, forcing Leider to refuse housing for his own safety. *Id.* at 8. Leider also alleges that he was written up for refusing housing and was placed in the special housing unit from June 16, 2020, until June 22, 2020, at which point he was transferred to the west unit. *Id.*

Leider states that he was transferred to the River Ridge Oral and Maxillofacial Surgical Center in Sioux Falls on June 26, 2020, after repeated complaints and requests to Health Services. *Id.* He claims that he was examined by Dr. Andrew Hille at the Surgical Center, who recommended immediate surgery to remove the existing hardware from Leider's jaw. *Id.* He also claims that Health Services noted several symptoms that day, including a pocket of fluid in his lower left jaw from an infection following his surgery, his difficulty swallowing, and bleeding in his gums. *Id.* at 8-9. Leider alleges that he still was unable to sleep and had extreme pain while eating on June 29, 2020, 30 days after his surgery. *Id.* at 9. He alleges that he was taking Tylenol

---

[1] In his complaint, Leider writes that he "feared attack by associates of him whom had attacked Plaintiff causing the fractures of his jaw[.]" Docket 1 at 7. It is unclear if Leider is claiming that he feared associates of his who had attacked him or that he feared associates of those who had attacked him. *See id.* In other words, it is unclear if he alleges that he was to be housed with his attackers or that he was to be housed with associates of his attackers. *See id.*

and ibuprofen at this time, which provided no relief. *Id.* He also alleges that the hardware along his lower gums was being buried by surrounding tissue on July 7, 2020, and that he had to push back the hardware to prevent this. *Id.* He also claims that the rubber bands had all snapped off by this point. *Id.*

Leider claims that Dr. Hille performed a second surgery on July 15, 2020, to correct the harm caused by Dr. Moeller's surgery. *Id.* He claims that he interacted with Chief Warden Darin Young several times over the next nine days and that he told Young he'd like to be transferred back to his home state of Montana. *Id.* at 10. Leider also claims that he told Young he'd like to sue Dr. Moeller, but Young warned him that if he sued Dr. Moeller in his official capacity, Leider would be suing Young, too. *Id.* Leider alleges that Young threatened not to allow his transfer to Montana and to oppose his parole if he sued Dr. Moeller in his official capacity. *Id.*

Leider brings claims against all defendants in their individual and official capacities for violating his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 2, 4. He seeks declaratory and injunctive relief, although he does not specify the injunctive relief sought. *Id.* at 14. He also seeks an unspecified amount of damages "to be determined by competent appointed counsel." *Id.*

## B.    Legal Background

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89,

94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

### C.    Legal Analysis

### 1. Official Capacity Claims for Money Damages

Leider brings claims against all defendants in their official capacities. Docket 1 at 2. All defendants were employees of the state of South Dakota at the times in question except for Dr. Moeller, who had a contract with the state to provide dental services at the time.[2] *See id.* "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Here, Leider requests both money damages and injunctive relief. The state of South Dakota has not waived its sovereign immunity. Thus, Leider's claims for money damages against all defendants in their official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

---

[2] Because Dr. Moeller was a private actor that had contracted with the state to provide medical services, he acted under color of state law and can be sued under § 1983. *See West v. Atkins*, 487 U.S. 42, 56 n.14 (1988).

## 2.    Eighth Amendment Medical Care Claims

Leider brings claims for inadequate medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *See* Docket 1 at 4-10. Construing his complaint liberally, these are claims for deliberate indifference to serious medical needs against all defendants. *See id.* "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical

8

needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Coleman*, 114 F.3d at 784 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Leider fails to state claims against Dr. Moeller, Klawitter, Wilson, and Hanson for deliberate indifference to his serious medical needs. Leider alleges that Dr. Moeller performed surgery on him, that Dr. Moeller had not performed this type of surgery before, and that the outcome of the surgery was poor. *See* Docket 1 at 5-10. While Leider does demonstrate objectively serious medical needs, he fails to show that Dr. Moeller deliberately disregarded those needs as required under *Dulany*. At most, Leider alleges negligence on the part of Dr. Moeller, and *Jolly* is clear that mere negligence is not sufficient to show a constitutional violation. Further, although he alleges that he was denied hydrocodone by Klawitter, he does not allege that Klawitter deliberately disregarded his needs. *See id.* at 6-7. He was still treated with other pain medication, and his claim is a mere disagreement with treatment decisions under *Jolly*. To the extent that Leider brings claims against Wilson and

9

Hanson, he alleges no facts regarding their connection to his medical care. *See id.* at 5-11. Thus, Leider's Eighth Amendment deliberate indifference to serious medical needs claims against Dr. Moeller, Klawitter, Wilson, and Hanson are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3.    Eighth Amendment Excessive Force Claims

Construing his complaint liberally, Leider brings claims against all defendants for excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment against all defendants. *See* Docket 1 at 4, 6-7. The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In considering an Eighth Amendment claim for excessive force, the "core judicial inquiry . . . [is] whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson,* 503 U.S. at 7). To determine whether force was used in good faith, "courts may consider the need for applying force, the relationship between that need and the amount of force utilized, the threat the responsible officials reasonably perceived, any efforts used to diminish the severity of a forceful response, and the extent of the injury inflicted." *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 7).

10

Leider successfully states a claim for excessive force against Wilson. He alleges that Wilson "squeezed[,] jerked[,] and pushed" him from Dr. Moeller's office to the transport vehicle. Docket 1 at 7. He also alleges that he was in intense pain at this time and that the only actions he took to prompt Wilson's actions were to ask about his medical condition. *Id.* at 6-7. Although Leider does not allege that he was injured by Wilson other than suffering pain, he alleges that no good-faith effort to maintain or restore discipline was necessary because he was not doing anything disruptive. *See id.* Thus, the court cannot conclude that Leider's claim against Wilson is wholly without merit. Leider's Eighth Amendment excessive force claim against Wilson in his or her individual capacity and in his or her official capacity for injunctive relief survive § 1915A screening. Leider alleges no facts regarding excessive force used by Dr. Moeller, Hanson, or Klawitter. His excessive force claims against Dr. Moeller, Hanson, and Klawitter are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4.    Eighth Amendment Conditions of Confinement Claims

Construing his complaint liberally, Leider brings claims for conditions of confinement in violation of his Eighth Amendment right to be free from cruel and unusual punishment against all defendants. *See id.* at 4, 7-8. To sufficiently allege that the conditions of confinement violate the Eighth Amendment, Leider must assert that the alleged deprivation resulted "in the denial of the minimal civilized measure of life's necessities" and that prison officials were deliberately indifferent to "an excessive risk to inmate health or

safety." *Farmer*, 511 U.S. at 834, 837 (internal quotation omitted); *see also Dalrymple v. Dooley*, 2014 WL 4987596, at *5 (D.S.D. Oct. 6, 2014). First, under the objective component, an inmate must show that a condition of confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Supreme Court has listed "food, clothing, shelter, medical care, and reasonable safety" as minimal civilized measures. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

Second, under the subjective component, the inmate must show that the defendant prison officials "act[ed] with a sufficiently culpable state of mind" in relation to the prison condition. *Hudson*, 503 U.S. at 8 (alteration in original) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A " 'should-have-known' standard . . . is not sufficient to support a finding of deliberate indifference[.]" *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). A prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result." *Farmer*, 511 U.S. at 835. A prisoner need only show that the prison official knew of and disregarded "an excessive risk to inmate health or safety." *Id.* at 837. This "subjective approach to deliberate indifference does not require a prisoner seeking 'a remedy for unsafe conditions [to] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief.' " *Id.* at 845 (alterations in original) (quoting *Helling*, 509 U.S. at 33-34).

12

Leider successfully states claims for conditions of confinement in violation of his Eighth Amendment rights against Hanson. He alleges that he was to be housed either with inmates who had previously assaulted him or with inmates who were associates of those who had previously assaulted him. *See* Docket 1 at 7. These inmates posed an unreasonable risk of serious damage to his future health. He also alleges that he complained to Hanson and asked Hanson to transfer him to the west unit because of the danger posed by his housing assignment. *Id.* at 8. Thus, Hanson knew of the risk to Leider's safety. Although Leider was placed in the special housing unit and was not subjected to the threat posed by his initial housing assignment, he alleges that this placement was a punishment, rather than an effort to address the dangerous condition, and that he was written up for it. *See id.* Because the Eighth Amendment is concerned with cruel and unusual punishment, a punishment for refusing a dangerous housing condition does not negate deliberate indifference towards that condition. Leider's Eighth Amendment conditions of confinement claims against Hanson in his individual capacity and in his official capacity for injunctive relief survive § 1915A screening.

To the extent that Leider brings these claims against Dr. Moeller, Wilson, and Klawitter, he alleges no facts regarding their role in the conditions of his confinement. His conditions of confinement claims against Dr. Moeller, Wilson, and Klawitter are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

13

Thus, it is ORDERED:

1.   That Leider's Eighth Amendment excessive force claims against Officer Wilson in his or her individual capacity and in his or her official capacity for injunctive relief survive § 1915A screening.

2.   That Leider's Eighth Amendment conditions of confinement claims against Cody Hanson in his individual capacity and in his official capacity for injunctive relief survive § 1915A screening.

3.   That all of Leider's remaining claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2).

4.   That the Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Leider so that he may cause the complaint to be served upon defendants Wilson and Hanson.

5.   That Leider shall complete and send the Clerk of Court a separate summons and USM-285 form for defendants Wilson and Hanson. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

6.   The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Docket 1) and this order, upon defendants Wilson and Hanson.

14

7.    Defendants Wilson and Hanson will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

8.    Leider will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated March 21, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE